1  NEIL D. GREENSTEIN (SBN 123980)
   TECHMARK
2  15466 Los Gatos Blvd., #109-150
   Los Gatos, CA 95032
3  Telephone (347) 514-7717
   Facsimile: (408) 280-2250
4  Email: ndg@techmark.com

5  MARTIN R. GREENSTEIN (SBN 106789)
   TECHMARK, a Law Corporation
6  4820 Harwood Road, Suite 200
   San Jose, CA 95124
7  Telephone: (408) 266-4700
   Facsimile: (408) 850-1955
8  Email: mrg@techmark.com

9  Attorneys for Defendant
   EMBARCADERO TECHNOLOGIES, INC.
10

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14  DELPHIX CORP.,                      CASE NO.  5:16-CV-00606-BLF

15              Plaintiff,              **DEFENDANT'S REPLY MEMORANDUM**
                                        **IN SUPPORT OF MOTION TO DISMISS**
16       v.                             **FOR LACK OF SUBJECT MATTER AND**
                                        **PERSONAL JURISDICTION**
17  EMBARCADERO TECHNOLOGIES, INC.,

18              Defendant.              Date:         August 18, 2016
                                        Time:         9:00 am
19                                      Courtroom:  3, 5th Floor
                                        Judge:  Hon. Beth Labson Freeman
20

21

22

23

24

25

26

27

28

Deft.'s Reply ISO Mtn To Dismiss-5:16-CV-606-BLF

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION .................................................................................................1

II.   ARGUMENT ......................................................................................................2

    A.    The Parties' Interactions Before This Lawsuit Concerned Only The
        TTAB Proceedings; There Was Never A Threat Of Litigation. ........................2

    B.    Even If This Court Decides There Is An Actual Case Or Controversy
        (There Isn't), It Should Exercise Its Discretion Not To Hear This
        Litigation And Should Instead Defer To The Specialized Expertise
        Of The TTAB. ....................................................................................................5

    C.    This Lawsuit is All About Forum Shopping, Not any Substantial
        Controversy Requiring Immediate Issuance of A Declaratory Judgment.........6

III.  THIS COURT LACKS PERSONAL JURISDICTION ......................................7

    A.    The Fact That Embarcadero's Move To A Principal Place Of Business
        Outside California Took Place Relatively Recently Makes No Difference
        To Whether There Can Be General Jurisdiction, As Long As The Move
        Pre-Dates Filing Of The Complaint. ...................................................................7

    B.    There Is No Specific Jurisdiction In This Case..................................................10

IV.   CONCLUSION ....................................................................................................12

1

# TABLE OF AUTHORITIES

2

3

**<u>Cases</u>**                                                                                     <u>Page No.</u>

4

*24 Hour Fitness USA, Inc. v. Apex Stores, LLC*
  2008 WL 4155598 (N.D. Cal. Sept. 5, 2008)................................................ 3, 4

5

*Avocent Huntsville Corp. v. Aten Int'l Co.*
6   552 F.3d 1324 (Fed. Cir. 2008) .................................................................. 11

7

*Bittorrent, Inc. v. Bittorrent Marketing GMBH*
  2014 WL 5773197 (N.D. Cal. Nov. 5, 2014) ................................................. 11

8

*Chesebrough-Pond's v. Faberge*
9   666 F.2d 393 (9th Cir. 1982) ........................................................................ 3

10

*Daimler AG v. Bauman*
  ___ U.S. ___, 134 S. Ct. 746 (2014) ........................................................ 2, 7, 8

11

*FN Cellars, LLC v. Union Wine Co.*
12   2015 WL 5138173 (N.D. Cal. Sept. 1, 2015) ................................................. 4

13

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*
  896 F.2d 1542 (9th Cir. 1990) ................................................................... 1, 2

14

*Keeton v. Hustler Magazine, Inc.*
15   465 U.S. 770 (1984) ................................................................................... 8

16

*Lightfoot v. Cendant Mortgage Corp.*
  769 F.3d 681 (9th Cir. 2014) ....................................................................... 7

17

*NeilMed Products, Inc. v. Med-Systems, Inc.*
18   472 F.Supp.2d 1178 (N.D. Cal. 2007) ....................................................... 3, 4

19

*NXP Semiconductors USA, Inc. v. France Brevets, S.A.S.*
  2014 WL 4621017 (N.D. Cal. Sept. 15, 2014) .............................................. 11

20

*Oakley, Inc. v. Bolle America, Inc.*
21   1992 U.S. Dist. LEXIS 9517 (C.D. Cal. March 26, 1992) .............................. 3, 4

22

*Perkins v. Benguet Consolidated Mining Co.*
  342 U.S. 437 (1952) ................................................................................... 8

23

*Societe de Conditionnement en Aluminium v. Hunter Engineering Co.*
24   655 F.2d 938 (9th Cir.1981) ..................................................................... 1, 3

25

*Square, Inc. v. Morales*
  2013 WL 6199281 (N.D. Cal. Nov. 27, 2013) .............................................. 11

26

27

28

## I.    INTRODUCTION

Plaintiff DelphiX Corp.'s ("DelphiX") opposition to defendant Embarcadero Technologies, Inc.'s ("Embarcadero's") motion to dismiss is long on claims about DelphiX' supposed apprehension of litigation and short on any showing that litigation was in any way contemplated in the *more than five years* the parties have been locked in a trademark opposition dispute at the Trademark Trial and Appeal Board ("TTAB")[1].  DelphiX is attempting to leverage the allegations made in the TTAB proceeding—where Embarcadero is simply using one of the grounds set forth in the Trademark Act, likelihood of confusion to oppose DelphiX' registration—into a credible threat of litigation.  But if litigation has not been filed during the more than five years the parties have been maneuvering before the TTAB, there can be no credible threat of impending litigation which would justify the assumption of declaratory judgment jurisdiction in this case.  "The purpose of the Declaratory Judgment Act is 'to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never.'"  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1990), *citing, Societe de Conditionnement en Aluminium v. Hunter Engineering Co.*, 655 F.2d 938, 943 (9th Cir.1981).  There is no threat of impending litigation here; this lawsuit is no more than an attempt to forum shop at a very late stage and circumvent the TTAB proceedings on the eve of DelphiX being forced to respond to discovery after a critical TTAB ruling.

Moreover, even if this Court were to find there was an actual live controversy suitable for adjudication under the Declaratory Judgment Act (there isn't), it should nevertheless decline to accept jurisdiction.  The years of proceedings before the TTAB should not be rendered nugatory by having this Court prematurely preempt the TTAB after 5-1/2 years of litigation and on the eve of trial in that

---

[1]Applicant and its mark as referred to as DelphiX to emphasize the very points Embarcadero has made during the lengthy opposition proceedings: that DelphiX originally chose the name based on the famous all-knowing Delphi of Oracle and expressly states that on its website until Embarcadero pointed this out in the early days of the opposition, that the addition of a suffix "X" (or"-X") to software is a common designation for an eXpanded or eXtended version of a product (including, historically, versions or extensions of Embarcadero's Delphi over the years), or that it is a common designation for version "10" or "X" or an operating system or product (e.g., Apple's OS X or Acrobat X)

forum.[2]  The adjudicatory body with specialized expertise in trademark matters can and should weigh the parties' contentions and resolve their controversy finally and completely.

In addition, there is no personal jurisdiction here.  The Supreme Court's recent decision in *Daimler AG v. Bauman*, ___ U.S. ___, 134 S. Ct. 746, 761, (2014) made clear that general jurisdiction is proper only where a corporation is "essentially at home" in the forum state.  Although Embarcadero was *once* at home in California, there can be no serious dispute that it moved its principal place of business to California before DelphiX filed this lawsuit.  The evidence DelphiX cites in support of its claim that Embarcadero remains at home in California shows only that the move from this state is recent enough that not every employee has updated his or her social media presence to reflect the change and that Embarcadero has not yet had a chance to change *all* of the 700,000+ different pages on its website to reflect the move.  DelphiX points to no authority holding that, if a corporation's move to another principal place of business is recent enough, jurisdiction under *Daimler AG* remains in the former home.

Nor does DelphiX' assertion that specific jurisdiction exists here withstand analysis.  The *only* contact between the parties in the five years they have been engaged in a dispute about DelphiX' mark has related to TTAB proceedings **in Virginia**. The judicial enforcement activities in which Embarcadero has engaged have taken place entirely outside California and thus cannot provide a basis for specific personal jurisdiction in this state.

## II.    ARGUMENT

### A.    The Parties' Interactions Before This Lawsuit Concerned Only The TTAB Proceedings; There Was Never A Threat Of Litigation.

As noted, a declaratory judgment action is available to a plaintiff to relieve a "threat of impending litigation." *Hal Roach Studios*, 896 F.2d at 1555.  There is, and has never been, any such threat in this case.  In trademark and patent actions requesting declaratory relief, the plaintiff must demonstrate that it has "a real and reasonable apprehension that he will be subject to liability if he

---

[2] It should be noted, as well, that the losing party in the TTAB always has the option of appealing the TTAB's decision to a court.  Here, should a decision adverse to DelphiX issue from the TTAB, DelphiX could appeal to the Court of Appeals for the Federal Circuit, the U.S. District Court for the Western District of Texas or the U.S. District Court for the District of Delaware.

continues to manufacture his product." *Societe de Conditionnement en Aluminium v. Hunter Engineering Co.*, 655 F.2d at 944.  The evidence on which DelphiX relies to show that it has been threatened with "liability" simply does not add up to any credible threat.

DelphiX' claims as to the "threats" against it basically concern two issues.  First, DelphiX asserts that, in the TTAB proceedings, Embarcadero's Opposition "assert[s] the elements of trademark infringement."  DelphiX Memo., p. 5.  But of course it does!  Section 2(d) of the Trademark Act (15 U.S.C. § 1052(d)) states that one of the grounds for refusing registration is that the subject mark is likely "to cause confusion."  Embarcadero's TTAB Opposition simply stated the grounds for Embarcadero's argument that the DelphiX mark should be refused registration.  As the Ninth Circuit has noted, "a simple opposition proceeding in the Patent and Trademark Office generally will not raise a real and reasonable apprehension of suit."  *Chesebrough-Pond's v. Faberge*, 666 F.2d 393, 396 (9th Cir. 1982); *see also 24 Hour Fitness USA, Inc. v. Apex Stores, LLC*, 2008 WL 4155598 (N.D. Cal. Sept. 5, 2008);  *Oakley, Inc. v. Bolle America, Inc.,* 1992 U.S. Dist. LEXIS 9517 (C.D. Cal. March 26, 1992).[3]

DelphiX relies largely upon Judge Wilkens' decision in *NeilMed Products, Inc. v. Med-Systems, Inc.*, 472 F.Supp.2d 1178 (N.D. Cal. 2007) for its claim that the mere existence of an opposition proceeding *can* prove the existence of an actual case or controversy.  But in that case, the declaratory judgment action was filed less than two months after the defendant had filed an Opposition to a registration proceeding in the TTAB.  In those circumstances, the court found that, because the Opposition "invoked the language of trademark infringement and dilution," there was a reasonable apprehension that litigation was imminent.  In this case, by contrast, the lawsuit was filed *more than*

---

[3]   DelphiX mischaracterizes the rationale for the courts' respective decisions in *24 Hour Fitness* and *Oakley*.  DelphiX claims that the court dismissed the action in *24 Hour Fitness* because the controversy in question post-dated the original complaint and because plaintiff had filed the suit in bad faith.  DelphiX Memo., p. 7.  But the "controversy in question" was simply the declaratory relief action; by noting that no "actual 'case or controversy' existed at the time it filed its Original Complaint in this action," the court was simply stating its rationale, not suggesting that there was *another* controversy post-dating the original complaint.  And the finding of bad faith was based upon the filing of the declaratory relief action itself, it was not a statement that there was some *other* bad faith action.  Similarly, DelphiX claims that, in *Oakley*. the court dismissed the action "because the parties had entered into a covenant not to sue."  DelphiX Memo., p. 7.  But in fact, the *Oakley* court treated the lapse of time since any actual threats of suit as an independent reason for finding no subject matter jurisdiction; the existence of a covenant not to sue simply confirmed the court's findings.

*five years* after battle was joined in the TTAB.  Whether or not the defendant in *NeilMed* had a reasonable apprehension of litigation is debatable; the reasonableness of DelphiX' claim that litigation is imminent is not.  It is far too late in the process for DelphiX to claim apprehension of imminent litigation similar to that of the plaintiff in *NeilMed*.  *See 24 Hour Fitness*, 2008 WL 4155598 (opposition proceeding in the TTAB insufficient to show a credible threat of litigation)

The court in *Oakley, Inc. v. Bolle America, Inc.*, 1992 U.S. Dist. Lexis 9517, *7 (C.D. Cal. March 26, 1992) explained that the lapse of time between a "threat" of litigation (in that case, a letter) and the filing of a declaratory relief action renders any claim of "reasonable apprehension" of a lawsuit moot: "Even if defendant may have been reasonably fearful of trademark infringement litigation when it received the letter, the fact that no such action has been taken in three years renders any current apprehension of suit on the part of the defendant less than reasonable."  *See also*, *FN Cellars, LLC v. Union Wine Co*., 2015 WL 5138173 (N.D. Cal. Sept. 1, 2015) (declaratory relief action filed less than seven months after cancellation proceeding was filed was indicative of a reasonable apprehension of suit).

The second main ground for DelphiX' claim that it had a reasonable apprehension of suit is its assertion that, in settlement discussions, Embarcadero insisted that DelphiX abandon use of the "DelphiX corporate name and mark."  DelphiX is misrepresenting the content of the settlement communications at issue.  Consistent with the usual practice in TTAB registration proceedings (Reply Declaration of Martin R. Greenstein in Support of Embarcadero Technologies, Inc.'s Motion to Dismiss ("MRG Decl"), ¶2), Embarcadero was not during those discussions concerned primarily with DelphiX' current use of the mark on its software, but rather registration of the mark for broad categories.  If DelphiX were to obtain registration for use of its DelphiX mark for certain goods/services, and that registration became incontestable after five years, then it would have the right, notwithstanding Embarcadero's prior rights, to expand to *all* uses encompassed by the goods/services listed in the registration, even if those new products created a likelihood of confusion with Embarcadero's products.  Thus, Embarcadero was suggesting a settlement that allowed DelphiX to have its registration, but excluded DelphiX from certain uses that fell within the category in which it was attempting to obtain registration.  That is the way in which such TTAB disputes are often

1   settled—*i.e.*, by allowing registration coupled with a use restriction that permits the parties to coexist

2   peacefully in their respective uses of a challenged mark.

3           The evidence DelphiX cites does not demonstrate that Embarcadero intended to exclude

4   DelphiX from all uses of its mark, much less that Embarcadero threatened litigation.  The

5   accompanying declaration of Martin Greenstein explains the course of the negotiations and confirms

6   the fact that there has *never* been a threat of litigation.  Rather, each of the settlement communications

7   on which DelphiX relies shows the parties discussing how to restrict use so that, *if* DelphiX was

8   granted the registration it sought, Embarcadero could be assured that DelphiX would not later be in a

9   position to harm Embarcadero and expand its uses to interfere with Embarcadero's business. (MRG

10  Decl., ¶9.)

11          In any event, as further explained in the accompanying declaration of Martin Greenstein, all

12  settlement discussions were in the context of a proposed agreement by Embarcadero to withdraw its

13  opposition in the TTAB proceedings.  Nowhere in any of the email exchanges which DelphiX

14  reproduces (which, it should be pointed out, are three years old) is there a threat of "litigation" beyond

15  the TTAB administrative opposition proceeding.[4]  If there was no litigation filed after the purported

16  "threats" in 2013, there certainly can be no reasonable apprehension of such litigation now.

17      **B.    Even If This Court Decides There Is An Actual Case Or Controversy (There**

18          **Isn't), It Should Exercise Its Discretion Not To Hear This Litigation And Should**
            **Instead Defer To The Specialized Expertise Of The TTAB.**

19          In the opening memorandum, Embarcadero suggested that, even if this Court were to decide

20  that it had subject-matter jurisdiction, it should nevertheless stay any proceedings to allow the TTAB

21  proceeding—which has been pending for more than five years—to play itself out.  As noted above, *all*

22  of the parties' disagreements over the years concern DelphiX' U.S. registration and settlement

23  discussions about potential uses of the DELPHIX mark in connection with proposals to withdraw

24  Embarcadero's opposition.  While DelphiX claims that "[t]he TTAB does not have authority to resolve

25  many of the issues in this case concerning use of the mark" (DelphiX Memo, p. 10), it does not

26  actually discuss *what* issues between the parties require this Court's resolution.  At one point, DelphiX

27  _____

28  [4]   The email exchanges concerning settlement also mention "CTM" proceedings in the European
    Union.  It is significant that, when Embarcadero filed an opposition to DelphiX' CTM application in
    Europe, DelphiX withdrew its European application and no lawsuit has been filed.  (MRG Decl., ¶4)

claims that "[t]he parties' dispute goes beyond registration-related claims and encompasses allegations of trademark infringement, trade name infringement, and unfair competition."  DelphiX Memo., p. 10.  But DelphiX presents no evidence—beyond the parties' settlement communications in the TTAB proceeding—that show that the dispute goes "beyond" the issues to be resolved by the TTAB.

DelphiX mis-states the TTAB pleadings and proceedings when it states that the TTAB proceedings "encompass allegations of trademark infringement."  DelphiX has pointed to no such allegation. (MRG Decl., ¶2)  What is in common is that the Lanham Trademark Act prohibits registration when there is a likelihood of confusion.  15 U.S.C. §1052(d) [Section 2(d) of the Lanham Trademark Act] provides, in relevant part:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it -- consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive...

Embarcadero's TTAB filings made allegations directed at the registration provisions of Section 2(d) of the Lanham Act, not infringement.  Indeed, the TTAB does not even have the power to address infringement issues.  Moreover, as discussed above, the issues of trade name infringement and unfair competition, to the extent they are not directly relevant to the TTAB proceeding, involved settlement discussions in which Embarcadero requested use restrictions from DelphiX in return for agreeing to withdraw Embarcadero's opposition in the TTAB proceeding.  It is hardly unusual for parties to discuss wide-ranging issues concerning their respective uses of their marks in settlement discussions concerning the TTAB.

**C.**    **This Lawsuit is All About Forum Shopping, Not any Substantial Controversy Requiring Immediate Issuance of A Declaratory Judgment.**

Yet another reason for this court to decline jurisdiction is that DelphiX is engaging in forum shopping after five (5) years of litigating at the TTAB and on the eve of trial.  The TTAB in a ruling on January 21, 2016 (See, Ball Decl., Exh. 6) ruled on an issue of first impression and re-opened discovery *solely for Embarcadero* relating to whether or not DelphiX had really used its alleged trademark in commerce by the critical date under the law.  DelphiX filed the instant action on the day before it was obligated to provide discovery in the TTAB proceeding.  That legal maneuvering strongly indicates that DelphiX could not meet the factual test laid out by the TTAB in that ruling, and

that DelphiX feared losing at the TTAB.   *See* Detailed Discussion in Declaration of Neil Greenstein ("N. Greenstein Decl."), ¶¶ 4-13.  For this Court to assume jurisdiction at this time, it would nullify five years of effort at the TTAB and would deprive the parties of having a tribunal before which they have litigated for five years and which specializes in these types of disputes address complicated and highly specialized trademark registration issues.

Finally, DelphiX's claim that the TTAB is "at least 18 months away from rendering a decision" (DelphiX Memo., p. 10), even if true (although certainly a bit exaggerated), would not represent a reason for this Court to assume jurisdiction.  It is unlikely that this Court could render a decision on this controversy—after allowing time for discovery and motion practice—in less than 18 months.

## III.   THIS COURT LACKS PERSONAL JURISDICTION

### A.   The Fact That Embarcadero's Move To A Principal Place Of Business Outside California Took Place Relatively Recently Makes No Difference To Whether There Can Be General Jurisdiction, As Long As The Move Pre-Dates Filing Of The Complaint.

In the opening memorandum, Embarcadero pointed out that, notwithstanding the allegations of the complaint, Embarcadero had moved its principal place of business from California to Texas in October 2015, well prior to the filing of the complaint.  Embarcadero argued that, under the Supreme Court's recent decision in *Daimler AG v. Bauman*, ___ U.S. ___, 134 S. Ct. 746 (2014), a corporation could not be sued in a state under a theory of "general jurisdiction" unless its "affiliations with the State are so continuous and systematic as to render essentially at home" in that state.  *Id.*, 134 S.Ct. at 761 (internal citations and punctuation omitted).  "The two places where a corporation is 'essentially at home' and therefore subject to general jurisdiction are its place of incorporation and its principal place of business.  *Lightfoot v. Cendant Mortgage Corp.*, 769 F.3d 681, 689 (9th Cir. 2014), cert. granted, No. 14-1055, 2016 WL 3496734 (U.S. June 28, 2016).

DelphiX argues that, notwithstanding that there is no dispute that Embarcadero is not incorporated in California and no longer has its principal place of business here, this case falls within the narrow range of "exceptional case[s]" where these two factors are not dispositive.  *See Daimler*, 134 S.Ct. at 761, n. 19.  But the narrowness of the exception to this rule is emphasized by the Supreme

Court's use of its decision *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) as illustrative of the "exceptional" case.  *See id.*  In *Perkins*, the defendant was a mining company incorporated in the Philippines which had moved its principal place of business to Ohio temporarily as a result of the Japanese occupation of the Philippines during World War II.  The Supreme Court found that "general" jurisdiction was appropriate because "Ohio was the corporation's principal, if temporary, place of business."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780, n. 11 (1984).

DelphiX is now arguing, without citation to a *single case* supporting its claims, that the U.S. Supreme Court rule is too narrow and that it is appropriate in California to find jurisdiction on a "reverse *Perkins* theory"—*i.e.*, that jurisdiction is appropriate in California notwithstanding that Embarcadero had moved, because Embarcadero was once headquartered here.  But Embarcadero's move, unlike that in *Perkins*, is permanent, and there is no suggestion in *Daimler* or other Supreme Court cases that a "recent" move turns an ordinary case into an "extraordinary" one in the *Daimler* sense.

Moreover, the evidence on which DelphiX depends for its claim that this case is "extraordinary" shows nothing more than the fact that, in undertaking a move that required relocation or replacement of significant operations, Embarcadero prioritized certain operations and took longer to move others.  Thus, for example, a few of the pages to be found on Embarcadero's 700,000+ page website (at the time DelphiX filed its opposition memorandum on this motion) still indicated that Embarcadero was headquartered in California.  That is because Embarcadero focused on updating web sites that were responsible for business and gave lower priority to web sites that did not contribute to business, revenue and profits.  While updating the remaining web pages is in process, the lack of business significance of these other web pages is compelling in finding them irrelevant. (Reply Declaration of Laurie Crawford in Support of Embarcadero Technologies, Inc.'s Motion to Dismiss ("Crawford Decl."), ¶11 & Declaration of Heidi Farris in Support of Embarcadero Technologies, Inc.'s Motion to Dismiss ("Farris Decl."), ¶2-3)

DelphiX attempts to attribute some type of significance to the fact that Embarcadero San Francisco employees (or former employees) are attempting to solicit jobs on their personal LinkedIn and other social media pages.  The accuracy of those webpages are outside the control of

Embarcadero.  Indeed, LinkedIn pages are often used by employees of companies to "float" their resumes in the marketplace.  (Crawford Decl., ¶8)

The plain facts remain, however, that:

- Embarcadero's sales force had moved to Texas even before the acquisition in October 2015, (Crawford Decl.,¶2; Reply Declaration of Chris Smith in Support of Embarcadero Technologies, Inc.'s Motion to Dismiss ("Smith Decl."), ¶3).  All management functions, including C-Level people (e.g., CEO, CFO, CMO, etc.), and marketing and sales, were transitioned to Texas (and minimally in New York) before or immediately after the acquisition by Idera in October 2015.  (Declaration of Atanas Popov in Support of Embarcadero Technologies, Inc.'s Motion to Dismiss ("Popov Decl."), ¶6)

- Embarcadero had moved out of its main California office on Battery Street in San Francisco by January 1, 2016, leaving only two small California operating locations in Scotts Valley and Monterey.  The Monterey outpost was closed when its lease expired in early 2016.  The Scotts Valley office has been put up for sub-lease.  As of February 1, 2016, only 37 employees (of 324 worldwide) were still in California.  (Crawford Decl. ¶6)  That number has been reduced since, and there have been no new hires in California since the acquisition.  (Smith Decl., ¶8)  None of the employees remaining in California as of February 1, 2016 had management responsibilities.  (Crawford Decl., ¶5., Smith Decl., ¶8)

- In updating its website post-acquisition, Embarcadero performed a Google analytics analysis that found that 80% of visitors first came to 20% of the pages on the Embarcadero website.  (Farris Decl., ¶3)  Naturally, Embarcadero focused on updating those 20% of the pages first.  Because of the large number of pages on the website, not all have been updated with the new information.  (In fact, some pages still show that Embarcadero is located at 100 California Street in San Francisco, notwithstanding that it moved to Battery Street two years ago.  The Embarcadero website has largely been updated to reflect that Embarcadero operates out of Texas; some of the less-visited

1    pages (of over 700,000) may nevertheless still state that California is its base of

2    operations because Embarcadero prioritized changing the most heavily trafficked pages

3    first. (Farris Decl., ¶2, Popov Decl., ¶5 & Crawford Decl., ¶11)

4    • Some online end user license agreements still state that California is the principal place

5      of business only because the online links may have pointed to the old form of

6      agreement.  (Farris Decl, ¶8, Ex. 501)

7    • Some contact information regarding Embarcadero on social media sites was not

8      updated immediately to indicate that Embarcadero's business location is Texas because

9      Embarcadero does not consider social media as its primary (or even particularly

10     important) marketing tool and therefore changing social media information was lower

11     priority.  (Popov Decl., ¶9 & Crawford Decl., ¶8)

12   In short, none of the evidence on which DelphiX relies indicates in any way that

13   Embarcadero's principal place of business remains in California; rather, it shows only that less-

14   important information sources about Embarcadero had not yet been changed to reflect the move.  This

15   does not render this case "extraordinary" in the *Daimler* sense.[5]  Indeed, DelphiX urges a highly

16   unusual ruling that San Francisco be considered Embarcadero's principal place of business as of

17   February 4, 2016, when Embarcadero didn't have *any* place of business in San Francisco on that date

18   or thereafter.

19   **B.    There Is No Specific Jurisdiction In This Case.**

20   DelphiX's further argument that there is sufficient connection between the dispute between the

21   parties and this forum to create "specific" jurisdiction also mischaracterizes the facts of the dispute.

22   DelphiX backhandedly admits that a district court, in considering specific jurisdiction in the context of

23   patent or trademark disputes, must look to the defendant's "enforcement activities."  Opp. Memo., p.

24   _____

25   [5]  DelphiX points to an answer to a patent infringement complaint in which Embarcadero denies that
     its principal place of business is its present Texas address.  *See* Plassaras Decl. Exs. 12, 13.  As

26   DelphiX itself concedes, there is no claim in that document that the principal place of business
     remained in California.  The denial that the principal place of business was at Embarcadero's current

27   Texas address appears to be an attorney error.  The answer does not even address the allegation that
     Embarcadero's principal place of business was in California—the answer simply ignores that

28   allegation but rather denies that another location is the principal place of business of Embarcadero
     (which is why it is obvious that the answer constitutes attorney error).  In any event, the location of
     Embarcadero's principal place of business was not relevant to any issue in the patent lawsuit.

17; *see Square, Inc. v. Morales*, 2013 WL 6199281 (N.D. Cal. Nov. 27, 2013); *accord NXP Semiconductors USA, Inc. v. France Brevets, S.A.S.*, 2014 WL 4621017 (N.D. Cal. Sept. 15, 2014); *see Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008).  DelphiX claims that Embarcadero's activities regarding the registrability of DelphiX's mark have been directed to DelphiX in California.  Not so.  All "enforcement activities" at issue here took place in, and were directed to, the TTAB in Virginia.  *See Square, Inc.* 2013 WL 6199281 (noting that the relevant enforcement activities include "initiating judicial or extrajudicial patent enforcement within the forum"); *NXP Semiconductors*, 2014 WL 4621017 at * 10-11 (same).  The notion that, because Embarcadero used counsel based in California to conduct the proceedings before the TTAB in Virginia, or that because settlement meetings took place in California somehow means that Embarcadero's enforcement activities took place in this state would mean that a person or corporation could be held to have made itself liable for specific jurisdiction *whenever* it hires an attorney who resides in a forum.  Such a rule would render the requirement that "enforcement activities" take place in a forum state useless for determining when specific jurisdiction is appropriate, because it would mean that "enforcement activities" blend into a general "contacts" test.  That is not the rule— enforcement activities means the forum in which actual litigation is taking place.  In this case, there are *no* "extra-judicial" enforcement activities that have taken place in California.  All the contacts on which DelphiX relies to demonstrate specific jurisdiction relate to proceedings taking place in Virginia.  This is not a case where, for example, Embarcadero has threatened suit in California to accompany the TTAB proceedings in Virginia.  The enforcement activities at issue revolve only around Virginia.

DelphiX's claim that this Court's decision in *Bittorrent, Inc. v. Bittorrent Marketing GMBH*, 2014 WL 5773197 (N.D. Cal. Nov. 5, 2014) supports the assertion of specific jurisdiction here is misplaced.  In *Bittorrent*, the claim was not for declaratory relief, but for damages for cybersquatting.  There was, in that case, a credible case that the injury to the plaintiff took place in its home state of California.  In a declaratory relief action, by contrast, "enforcement activities" (at least those that are judicial) take place in the forum where cases are filed—in this case, the TTAB in Virginia.

1    DelphiX asserts that "[i]n the declaratory judgment context … courts have exercised specific

2    jurisdiction based on … extra-judicial conduct such as attempts to disrupt the plaintiff's business."

3    DelphiX Memo., p. 17.  Yet, DelphiX points to *no extra-judicial conduct* by Embarcadero that would

4    satisfy this test.  For five years, the parties have been dealing with each other in regard to a dispute

5    centered in Virginia; in that time, Embarcadero has done nothing to purposefully avail itself of

6    California law in such a way as to render specific jurisdiction fair and equitable.

7    **IV.    CONCLUSION**

8    For the foregoing reasons, and for the reasons stated in the opening memorandum, this Court

9    should dismiss this action for lack of both subject matter and personal jurisdiction.  If it does not dismiss,

10   it should nevertheless stay the action pending outcome of the TTAB proceeding.

11

12

13   DATED:  August 4, 2016                            NEIL D. GREENSTEIN
                                                       MARTIN R. GREENSTEIN
14

15                                              By:____/s/ Neil D. Greenstein_____
                                                       Attorneys for Defendant
16                                                     EMBARCADERO TECHNOLOGIES, INC.

17

18

19

20

21

22

23

24

25

26

27

28