UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DELPHIX CORP.,

    Plaintiff,

v.

EMBARCADERO TECHNOLOGIES, INC.,

    Defendant.

Case No. 16-cv-00606-BLF

**ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION WITHOUT LEAVE TO AMEND AND DISMISSING THE ACTION**

[Re: ECF 24]

    Plaintiff Delphix Corporation[1] ("Delphix") has sued for declaratory relief under the Lanham Act seeking a declaratory judgment of validity for its own trademark and a declaration that the Delphix name and trademarks used in connection with Delphix's products and services do not infringe, dilute, or unfairly compete with any trademark rights in the DELPHI mark purportedly owned by Embarcadero. Compl. ¶ 1, ECF 1. Embarcadero seeks dismissal of the complaint under Fed. R. Civ. P. 12(b)(1) on the grounds that the dealings between the parties have not given rise to a justiciable case or controversy under the Declaratory Judgment Act, and under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. ECF 24.

    The Court has considered the briefing and the oral argument presented at the hearing on August 18, 2016. For the reasons discussed below, the motion to dismiss for lack of subject matter jurisdiction is DENIED and the motion to dismiss for lack of personal jurisdiction is GRANTED.

---

[1] The Court recognizes that the parties disagree on how to designate the plaintiff. Plaintiff prefers "Delphix," whereas Defendant prefers "DelphiX." ECF 38. For purposes of this Order, the Court will use Plaintiff's designation of itself.

## I. BACKGROUND[2]

Plaintiff Delphix, which provides data and virtualization software and services, is incorporated in Delaware and has its principal place of business in Menlo Park, California. Compl. ¶ 2, ECF 1. Delphix uses a stylized version of its mark, with an angular red "fin" design in place of the letter L, as shown below. Compl. ¶ 8, ECF 1. Delphix owns a federal registration for the DELPHIX Logo, Registration Number 3,768,914. *Id.*



Embarcadero, a leading provider of software solutions for application and database development (Mot. 3, ECF 24), is a Delaware corporation that was founded in California. The parties agree that until at least October 2015, when Embarcadero was acquired by Texas-based Idera, Inc., Embarcadero's principal place of business was in San Francisco, California. Chambers Declr. ¶ 2, ECF 24-1; Opp. 2, ECF 34. However, the parties disagree on the *current* location of Embarcadero's principal place of business—Delphix alleges that Embarcadero's principal place of business remains San Francisco (Compl. ¶ 3, ECF 1), whereas Embarcadero maintains that its principal place of business is in Austin, Texas. Mot. 2, ECF 24.

Embarcadero is the owner of the trade name and trademark DELPHI, which it uses in connection with programing tools used to write code for software programs. Compl. ¶ 9, ECF 1. Embarcadero uses a helmet logo with its DELPHI mark, which it uses with a stylized version of its company mark, as shown below. *Id.* ¶ 10.



In February 2010, Delphix filed a trademark application, Serial No. 77/944,256, with the

---

[2] When a defendant challenges a court's personal jurisdiction over it, the plaintiff bears the burden of establishing that jurisdiction is proper. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). The plaintiff may meet that burden by submitting affidavits and discovery materials. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).
  Similarly, in deciding a Rule 12(b)(1) motion, the court is not restricted to the pleadings, but can also "review any evidence, such as affidavits and testimony, to resolve factual disputes regarding the evidence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (citation omitted).

U.S. Patent and Trademark Office ("PTO") stating its intent to use the mark DELPHIX on "computer software for use in database management; database management software for managing database storage and provisioning functions and instruction manuals sold therewith." Ex. 1 to Greenstein Declr. at 2, ECF 24-3 ("Notice of Opposition"). In December of that same year, Embarcadero instituted an opposition proceeding at the Trademark Trial and Appeal Board ("TTAB") of the PTO to prevent registration of the DELPHIX mark. *Id.* In its Notice of Opposition, Embarcadero alleged that registration of the DELPHIX mark was "likely to cause confusion, mistake or deception among purchasers, users and the public" and that it was "likely to lead to the mistaken belief that [Delphix]'s goods are sponsored by, affiliated with, approved by or otherwise emanate from [ ] Embarcadero." *Id.* at 3. In February 2012, making similar allegations, Embarcadero instituted a cancellation proceeding at the TTAB to cancel the DELPHIX Logo.[3] Ex. 3 to Greenstein Declr. ("Petition to Cancel"), ECF 24-5. More recently, in May 2015, Embarcadero moved to amend its petition for cancellation. Ex. 12 to Ball Declr., ECF 34-41. From August 2014 to January 2016, the Trademark Office suspended the TTAB proceedings pending the outcome of Delphix's motion for summary judgment and Embarcadero's motion to amend its Cancellation Petition. Ball Declr. ¶ 10, ECF 34-29. In January 2016, the Trademark Office granted Delphix's motion for summary judgment and denied in part and granted in part Embarcadero's motion to amend its Cancellation Petition. Ex. 6 to Ball Declr., ECF 34-35. In its order, the Trademark Office set a schedule for trial on the substantive issues. *Id.* The TTAB proceedings have been stayed in favor of this action. Opp. 10, ECF 34.

While the TTAB proceedings were ongoing, Delphix attempted to resolve the dispute. In April 2012, for example, Embarcadero's counsel, in response to a settlement inquiry, responded that it saw "no settlement proposal that would leave Delphix able to use the Delphix corporate name and mark." Ex. 1 to Ball Declr. at 2, ECF 34-30. In June 2013, Delphix offered to resolve the parties' dispute by placing limitations on its trademark application and registration. Ex. 2 to Ball Declr. at 3, ECF 34-31. Embarcadero's counsel responded that any "useful basis for

---

[3] The opposition and cancellation proceedings have been consolidated. Greenstein Declr. ¶ 6, ECF 24-2.

3

1 discussion" would need to include a limitation on Delphix's use of the mark. *Id.* at 2. The parties
2 continued to discuss settlement at various in-person meetings in California and through e-mail,
3 even after this action was brought before the Court. Ball Declr. ¶¶ 6–11, 18–19, ECF 34-29. As
4 recently as April 28, 2016, "Embarcadero's counsel reiterated Embarcadero's position that a
5 settlement would require that Delphix: (1) change the DELPHIX company name; (2) stop its
6 current use of the DELPHIX mark; and (3) modify its marketing materials using the DELPHIX
7 mark." *Id.* ¶ 18. Embarcadero has not responded to Delphix's recent request to sign a covenant
8 not to sue Delphix over use of its company name and trademark. *Id.* ¶ 19.

## II.     MOTION TO DISMISS FOR LACK OF A CASE OR CONTROVERSY

### A. Legal Standard

As required by Article III, courts may adjudicate only actual cases or controversies. U.S. Const. art. III, § 2, cl. 1. "When presented with a claim for a declaratory judgment, therefore, federal courts must take care to ensure the presence of an actual case or controversy, such that the judgment does not become an unconstitutional advisory opinion." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007) (citing *Pub. Serv. Comm'n v. Wycoff, Co.*, 344 U.S. 237, 244 (1952)). "Absent a true case or controversy, a complaint solely for declaratory relief under 28 U.S.C. § 2201 will fail for lack of jurisdiction under Rule 12(b)(1)." *Id.* (citation omitted).

The Declaratory Judgement Act ("DJA") authorizes the court to "declare the rights and other legal relations of any interested party" to a "case of actual controversy within its jurisdiction." 28 U.S.C. §2201(a). In *MedImmune*, a patent licensing dispute, the Supreme Court stated that the actual controversy requirement of the DJA demands only

> that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts . . . . The question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citations and quotations omitted).

In response to *MedImmune*, the Federal Circuit dropped its discredited "reasonable

4

apprehension of imminent suit" test and has adopted in its place the "all circumstances" test. Under this new approach, a declaratory judgment plaintiff is required only to satisfy Article III, which includes standing and ripeness, by showing under "all the circumstances" an actual or imminent injury caused by the defendant that can be redressed by judicial relief and that is of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007) (quoting *MedImmune*, 549 U.S. at 127). The "all circumstances" test is a "more lenient legal standard" that "facilitates or enhances the availability of declaratory judgment jurisdiction." *Micron Tech. v. Mosaid Techs. Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008).

The Ninth Circuit has not revisited the standard since *MedImmune*, thus, under Ninth Circuit trademark law, to satisfy the actual controversy requirement, the plaintiff must show "real and reasonable apprehension" that it would be liable for infringement if it continued marketing its product. *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982) (citing *Societe de Conditionnement en Aluminium v. Hunter Eng'g, Inc.*, 655 F.2d 938 (9th Cir. 1981); *see also Rhoades*, 504 F.3d at 1157 (treating the controversy analysis similarly for patents and trademarks). The showing of apprehension "need not be substantial" when an allegedly infringing mark is in use. *See Societe de Conditionnement*, 655 F.2d at 944.

The Court is not required to hear every declaratory judgment case. It may decline to exercise jurisdiction over a declaratory judgment action even when the facts show a live controversy. *Neilmed Prods., Inc. v. Med–Sys., Inc.*, 472 F. Supp. 2d 1178, 1182 (N.D. Cal. 2007). The Supreme Court and Ninth Circuit have identified a number of prudential factors for the Court to consider in deciding whether to exercise jurisdiction. *Id.* at 1180 (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942); *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)). These factors include:

> [W]hether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a *"res judicata"* advantage; or whether the use of a declaratory action will result in entanglement between the federal and State court systems.

5

*Id.*

**B. Discussion**

Embarcadero argues that there is no case or controversy that would confer subject matter jurisdiction on this Court because "Delphix has *not* been subjected to threats of litigation or other adverse action if it continues to use its DELPHIX mark. All that has occurred is that Embarcadero filed a trademark opposition/cancellation . . . before the TTAB, and during which time Delphix marketed its DELPHIX database management software." Mot. 5, ECF 24 (emphasis in original). Embarcadero also argues "that the mere filing of a TTAB opposition is *not* sufficient to create a case or controversy for subject matter jurisdiction purposes." *Id.* at 7 (citations omitted). Conversely, Delphix argues that Embarcadero has alleged the prima facie elements of trademark infringement in its cancellation and opposition proceedings and has demanded that Delphix stop using its name altogether. Thus, Delphix contends it is reasonable for it to infer a threat of an infringement action. Opp. 4–5, ECF 34. The Court agrees; the record of communication between the parties both before and after this suit was filed and the ongoing TTAB proceedings paint a clear picture of a "substantial controversy" that is "definite and concrete" enough to be addressed by the Court. *See MedImmune*, 549 U.S. at 127.

As previously explained, Embarcadero has filed opposition and cancellation proceedings at the TTAB, both of which invoke the language of trademark infringement and dilution. *See Neilmed*, 472 F. Supp. 2d at 1181 (finding subject matter jurisdiction in a case based on the substance of a notice of opposition alone). Embarcadero's Notice of Opposition alleges that Delphix's mark is "identical or very similar to" Embarcadero's mark and is "likely to cause confusion, mistake or deception among purchasers, users and the public, thereby damaging" Embarcadero. Notice of Opposition at 3, ECF 24-3. Embarcadero's Petition to Cancel similarly alleges that the DELPHIX Logo is "identical or very similar to" Embarcadero's mark, that simultaneous use of the marks is "likely to cause confusion, mistake or deception among purchasers, users and the public" thereby damaging Embarcadero, and continued use of the DELPHIX Logo is "likely to lead to the mistaken belief that [Delphix's] goods are sponsored by, affiliated with, approved by or otherwise emanate from Petitioner Embarcadero," thereby

1 damaging Embarcadero. Petition to Cancel at 3, ECF 24-5.

2     In addition to instituting these two proceedings at the TTAB, the parties have engaged in pre- and post- lawsuit settlement talks. *See* Ball Declr., ECF 34-29. Embarcadero's position that Delphix would have to stop using the DELHPIX company name and trademark to resolve the parties' dispute makes clear that Embarcadero seeks to resolve issues beyond those before the TTAB. For example, in May 2015, Delphix offered to withdraw its DELPHIX trademark application and registration in exchange for Embarcadero agreeing that Delphix could continue to use the DELPHIX company name and trademark. *Id.* ¶ 11. Embarcadero "rejected this proposal." *Id.* In February 2016, Delphix again offered to withdraw its application and registration. *Id.* ¶ 15. "Embarcadero's counsel responded by repeating Embarcadero's position that a settlement would require Delphix to cease use of its existing DELPHIX company name, and either cease use of or substantially limit its current use of its DELPHIX trademark." *Id.* This cycle continued through April 2016. *Id.* ¶ 16–18. Despite these continued talks, and its assertion at the August 18th hearing that it is not concerned with any past or current infringement, Embarcadero has neither responded to Delphix's request that Embarcadero sign a covenant not to sue Delphix over use of its company name and trademark, nor has it given Delphix any assurances that it would not assert a claim regarding Delphix's use of its company name and trademark. *Id.* ¶ 19. These facts amply establish the existence of an actual and justiciable controversy, particularly in light of the fact that Delphix continues to use the allegedly infringing marks.

    None of Embarcadero's arguments compel a different conclusion. Embarcadero's assertion that "[i]t is far too late in the process for DelphiX to claim apprehension of imminent litigation," (Reply 4, ECF 35), is unavailing in light of its continued demand that Delphix change its name and its refusal to sign a covenant not to sue. For the reasons discussed above, also unavailing is Embarcadero's argument that the settlement discussions did not create a reasonable apprehension of suit. Reply 4, ECF 35.

    Accordingly, the Court finds that Delphix has met its burden of showing that it has "a real and reasonable apprehension" of being sued for trademark infringement by Embarcadero, thereby showing that the dispute has sufficiently ripened into a "case of actual controversy." *See NeilMed*

7

*Prods.*, 472 F. Supp. 2d at 1179.

Despite the Court's initial concerns about forum shopping, the Court does not address the discretionary factors because the Court does not have personal jurisdiction over the defendant.

### III. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

#### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek dismissal of an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza*, 793 F.3d at 1068 (internal quotation marks and citation omitted). "[T]he plaintiff cannot simply rest on the bare allegations of its complaint." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and citation omitted). However, uncontroverted allegations in the complaint are accepted as true, and factual disputes created by conflicting affidavits are resolved in the plaintiff's favor. *Id.*

Where no applicable federal statute governs personal jurisdiction, "the law of the state in which the district court sits applies." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Id.* "[D]ue process requires that the defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Ranza*, 793 F.3d at 1068 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks and citation omitted). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Id.* at 1068. "General jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (internal quotation marks and citation omitted). A nonresident that is subject to the court's general jurisdiction may be sued for claims "arising from dealings entirely distinct" from the forum-

8

related activities. *Id.* (internal quotation marks and citation omitted) (emphasis omitted). In contrast, specific jurisdiction exists when the defendant's contacts with the forum state are more limited but the plaintiff's claims arise out of or relate to those contacts. *Id.* at 754. General jurisdiction is referred to as "all-purpose" jurisdiction whereas specific jurisdiction is referred to as "case-specific" or "case-linked" jurisdiction. *Ranza*, 793 F.3d at 1069 n.2 (citations omitted).

### B. Discussion

Plaintiff contends that Defendant is subject to both general jurisdiction and specific jurisdiction in this district. The Court addresses those contentions in turn.

#### 1. General Jurisdiction

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760. "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* (internal quotation marks, citation, and alterations omitted). "Those affiliations have the virtue of being unique – that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* In order to find that a corporation is subject to general jurisdiction in yet another forum, the plaintiff must demonstrate not only "continuous and systematic" contacts with the forum—that alone is insufficient—but that the "corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Id.* at 761 (internal quotation marks and citation omitted). Defendant's contacts do not come close to meeting this high standard.

Delphix cites the following facts in an attempt to demonstrate that Embarcadero's principal place of business remains in California: (1) "Embarcadero continues to promote itself on social media as having a principal place of business in San Francisco"; (2) Embarcadero "expressly denied that its principal place of business is at 10801 N Mopac Expressway, Building 1, Suite 100, Austin[,] Texas 78759" in an answer to a complaint filed in the Eastern District of Texas; (3) "Embarcadero continues to represent that it has a California address to the Trademark Office"; (4) "neither in its motion nor discovery responses has Embarcadero substantiated its assertion that Austin, Texas was the location of most of its employees at the time Delphix filed this lawsuit"; and (5) "Embarcadero relies on California law and its San Francisco offices in its contracts and

9

policies addressed to consumers." Opp. 12–13, ECF 34. None of these weigh in favor of a finding that Embarcadero is subject to general jurisdiction in California. Embarcadero has submitted evidence demonstrating that the first, third, and fifth facts cited amount to nothing more than fragments of a transition induced by a legitimate acquisition that occurred only four months before this suit was filed. *See* Crawford Declr., ECF 35-1; Popov Declr., ECF 35-2; Farris Declr., ECF 35-3; Smith Declr., ECF 35-5. Embarcadero has admitted that its representation to the District Court for the Eastern District of Texas was due to attorney error. Reply 10 n.5, ECF 35. And, Embarcadero has addressed Delphix's fourth contention in the Declaration of Laurie Crawford, Director of Human Resources for Embarcadero's parent company. Crawford Declr. ¶ 6, ECF 35-1 ("As of February 1, 2016 . . . of [a] total of 324 employees, approximately 37 worked in California . . . . [O]nly about 11.5% of the worldwide Embarcadero workforce were employed in California.").

Under these facts, the Court finds that Embarcadero is no longer "at home" in California, and thus is not subject to this Court's general jurisdiction.

### 2. Specific Jurisdiction

The Ninth Circuit has established a three-prong test for determining whether a non-resident Defendant is subject to specific personal jurisdiction in a forum:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

When a case sounds in tort, as this one does,[4] the Court is concerned with whether the defendant has "purposefully directed" its activities at the forum state. This is distinct from the

---

[4] Cases involving trademark infringement are "akin to a tort case." *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1321 (9th Cir. 1998).

1 analysis for cases sounding in contract, where the court looks to "purposeful availment." *Id.* at
2 802–04. Plaintiff bears the burden of proof with regard to the first two elements. *Sher v. Johnson*,
3 911 F.2d 1357, 1361 (1990). If Plaintiff satisfies the first two elements of the *Schwarzenegger*
4 test, the burden shifts to Defendant to "present a compelling case" that exercising jurisdiction
5 would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). The first
6 prong is dispositive in this case.

### i. Purposeful Direction

Under the purposeful direction test, "a defendant purposefully directed his activities at the forum if he: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (internal quotation marks and citation omitted). This three-part "effects" test was first articulated in *Calder v. Jones*, 465 U.S. 783 (1984). In 2014, the Supreme Court revisited the *Calder* test, and the broader question of minimum contacts, in *Walden v. Fiore*, 134 S. Ct. 1115 (2014). There, the Supreme Court held that the analysis of these factors must focus on the "defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122. Thus, "mere injury to a forum resident is not a sufficient connection to the forum. . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 1125.

Here, Embarcadero argues that "[t]here is no 'nexus' between the activities in which Embarcadero engages in California and the 'controversy' between the parties." Mot. 9, ECF 24. Embarcadero further contends that "[t]o the extent there is a 'dispute' between the parties, it arises out of a TTAB proceeding in Alexandria, Virginia," and that an out of forum enforcement proceeding should not give rise to personal jurisdiction in the forum. *Id.* 9 (citing *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 792 (Fed. Cir. 2011)). Although at first blush it appears that Embarcadero is attempting to make what is clearly a California case a non-California case, this case presents the strange facts of something that looks and sounds like a duck, but is indeed not a duck.

11

### a. Intentional Act

Delphix must first demonstrate that Embarcadero committed an "intentional act," meaning that Embarcadero acted "with the intent to perform an actual, physical act in the real world." *Schwarzenegger*, 374 F.3d at 806. The evidence and Plaintiff's allegations establish that Defendant committed an intentional act by filing opposition and cancellation proceedings before the TTAB.[5]

### b. Express Aim

Delphix must also show that Embarcadero "expressly aimed" its intentional act—the filing of the TTAB proceedings—at California. Defendant contends that its conduct does not meet the second element of the *Calder* test because its conduct has been directed to the TTAB proceedings in Virginia, not at California. Mot. 9, ECF 24; Reply 10–11, ECF 35. Plaintiff argues that Embarcadero has expressly aimed the relevant actions at California because Embarcadero's efforts to enforce its trademark rights were directed into California and were originated in and controlled from California and because Embarcadero retained California counsel for the TTAB actions, attended two in-person settlement meetings in California, and conducted discovery in California. Opp. 17–18, ECF 34. Viewing the information presented to it, the Court finds that Delphix has not met its burden of showing that Embarcadero's conduct was aimed at California.

The fact that Embarcadero has pursued opposition and cancellation proceedings against California residents in the PTO and has conducted related discovery and settlement talks in the forum does not support the exercise of personal jurisdiction over Embarcadero in California. To find otherwise would contradict the Supreme Court's decision in *Walden v. Fiore*. 134 S. Ct. at 1123–24 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."); *see also Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360–61 (Fed. Cir. 1998) ("Principles of fair

---

[5] Delphix also points to Embarcadero's retaining of California counsel to conduct the proceedings before the TTAB and attending settlement meetings and conducting discovery. This activity, however, relates to the filing of the TTAB proceedings. Opp. 16, ECF 34; Ball Declr., ECF 34-29.

12

play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum."). A purported holder of rights—be they trademark or patent rights—has no control over the location of alleged infringers; it can only control where an action for infringement is ultimately brought, if at all. It cannot be said that Embarcadero expressly aimed at California by seeking to enforce its purported trademark rights against an alleged infringer that happened to be located in California. *See Picot*, 780 F.3d 1206 (holding that knowledge of a plaintiff's residence in the forum is not enough to satisfy the express aiming prong of the *Calder* test).

The Federal Circuit's holding *Radio Systems Corporation v. Accession, Inc.*, 638 F.3d 785 (Fed. Cir. 2011), supports this conclusion. In *Radio Systems*, the Federal Circuit affirmed the District Court's holding that the defendant's contacts with the PTO did not support the declaratory judgment plaintiff's jurisdictional argument because those contacts were not directed at the declaratory judgment forum. There, the purported infringer (Radio Systems), a Delaware corporation with its principal place of business in Knoxville, Tennessee, sought a declaratory judgement against the purported patent owner (Accession) of non-infringement in Tennessee. After the PTO issued a notice of allowance for Radio Systems' patent, Accession contacted the PTO to alert the examiner to the existence of its patent and contacted Radio Systems' counsel and stated his position that Radio System's product infringed on Accession's patent. *Id.* at 788. As a result of Accession's conversation with the PTO, the PTO withdrew the notice of allowance previously issued to Radio Systems. *Id.* Thereafter, Radio Systems filed a complaint in the U.S. District Court for the Eastern District of Tennessee seeking a declaratory judgment of noninfringement and invalidity with respect to the specific patent at issue. *Id.* Accession moved to dismiss the action for lack of personal jurisdiction. *Id.* The Federal Circuit found that the District Court in Tennessee could not constitutionally exercise jurisdiction over Accession, among other reasons, because "Accession's contacts with the PTO did not support Radio Systems' jurisdictional argument because those contacts were directed at Virginia (the site of the PTO) rather than Tennessee." *Id.* at 792. The Court sees no reason why the rule that extrajudicial enforcement activities outside of the forum state do not support a finding of jurisdiction should not

apply to proceedings before the TTAB. As applied here, then, this Court cannot constitutionally exercise jurisdiction over Embarcadero because its contacts with the PTO were directed at Virginia, not California.

Additionally, the notion that because Embarcadero used counsel based in California to conduct the proceedings before the TTAB in Virginia, or that because settlement meetings took place in California somehow means that Embarcadero "expressly aimed" its conduct at the State is unconvincing. *See Autonomy, Inc. v. Adiscov, LLC*, No. C 11-00420 SBA, 2011 WL 2175551, at *3 (N.D. Cal. June 3, 2011) (no personal jurisdiction where the defendant attended a meeting with the plaintiff's counsel in the forum to discuss a potential settlement of the defendant's infringement claims and a subsequent lawsuit filed by defendant in another forum). Any other conclusion would deter in-person settlement talks for fear that participating in such talks would confer personal jurisdiction on the out-of-state defendant.

### c. Causing Harm Likely to be Suffered in the Forum State

*Calder*'s third element requires the Plaintiff to show that the defendant "caused harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Because Delphix is a California company, "Embarcadero's intentional acts threaten harm that Embarcadero knows is likely to be suffered in California." Opp. 19, ECF 34.

Although Delphix has satisfied its burden of showing that Embarcadero engaged in intentional acts that could cause harm in California, it has not satisfied its burden of showing that Embarcadero's intentional acts were expressly aimed at the forum. Accordingly, the Court cannot constitutionally exercise jurisdiction over Embarcadero.

### ii. Arising Out of Forum-Related Activities and Determining Whether the Exercise of Jurisdiction Would Be Reasonable

Because the Court finds that Embarcadero has not expressly aimed its activities at the forum, the Court does not address the final prongs of the *Schwarzenegger* personal jurisdiction inquiry.

### IV. ORDER

14

United States District Court
Northern District of California

For the foregoing reasons, it is hereby ORDERED that Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED and the motion to dismiss for lack of personal jurisdiction is GRANTED. The complaint is hereby DISMISSED WITHOUT LEAVE TO AMEND and the action is DISMISSED.

Dated: August 25, 2016

_____
BETH LABSON FREEMAN
United States District Judge