NEIL D. GREENSTEIN (SBN 123980)
TECHMARK
1968 S. Coast Hwy., #1636
Laguna Beach, CA 92651
Telephone (347) 514-7717
Facsimile: (408) 280-2250
Email: ndg@techmark.com

MARTIN R. GREENSTEIN (SBN 106789)
TECHMARK, a Law Corporation
4820 Harwood Road, Suite 200
San Jose, CA 95124
Telephone: (408) 266-4700
Facsimile: (408) 850-1955
Email: mrg@techmark.com

Attorneys for Defendant/Counterclaimant
EMBARCADERO TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELPHIX CORP., | Case No.: 16-CV-606 BLF |
| Plaintiff/ Counter-Defendant, | |
| v. | **ANSWER AND COUNTERCLAIMS** |
| EMBARCADERO TECHNOLOGIES, INC. | **[Jury Trial Demanded]** |
| Defendant/ Counterclaimant. | |

Defendant Embarcadero Technologies, Inc. ("Embarcadero"), by and through its

attorneys, answers the Complaint filed by Delphix Corporation ("DelphiX") in correspondingly

numbered paragraphs, and counterclaims as follows:

1.      Embarcadero admits that this is an action for declaratory judgment.  The remaining allegations of paragraph 1 purport to set forth DephiX' intent.  Embarcadero lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 1, and therefore denies the allegations therein requiring strict proof thereof.  To the extent that DelphiX' allegations purport to state substantive facts, those allegations are denied.

2.      Embarcadero denies that DelphiX has its principal place of business in Menlo Park, California.  Embarcadero lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 2, and therefore denies the allegations therein requiring strict proof thereof.

3.      Embarcadero admits that it is incorporated under the laws of the State of Delaware.  Embarcadero denies that its principal place of business is in San Francisco, California.

4.      Embarcadero denies that this Court has subject matter jurisdiction.  Embarcadero lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 4, and therefore denies the allegations therein requiring strict proof thereof.

5.      Embarcadero denies the allegations contained in paragraph 5.

6.      Embarcadero admits the allegations contained in paragraph 6.

7.      Embarcadero admits that DelphiX offers software and that DelphiX' software has expanded to conflict with Embarcadero's long prior, extensive and valuable rights in the software field.  Embarcadero lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 7, and therefore denies the allegations therein requiring strict proof thereof.

8.      Embarcadero denies that DelphiX uses the mark shown in Figure 1 of paragraph Embarcadero admits that DelphiX purports to own U.S. Trademark Registration No. 3,768,914

1  for the alleged DelphiX logo mark and that such registration purports to claim rights to software

2  much broader than was offered by DelphiX at the time of registration.  Embarcadero further

3  admits that the scope of goods claimed in Registration No. 3,768,914 conflict with the long prior

4  rights of Embarcadero. Embarcadero further admits that what purports to be a federal registration

5  for a DELPHIX & Design mark is attached as Exhibit A, but Embarcadero denies ownership,

6  and validity of that purported registration.  Embarcadero lacks sufficient knowledge or

7  information to form a belief as to the truth of the remaining allegations contained in paragraph 8,

8  and therefore denies the allegations therein requiring strict proof thereof.

9         9.     Embarcadero admits that, among other uses, it uses its DELPHI mark in

10  connection with platforms and systems for application development software and integrated

11  development environments (IDE's), including, inter alia, in connection with programming tools

12  to write code for software programs and to enable the rapid and enhanced development of

13  database-driven applications.  The remaining allegations of paragraph 9 are vague, ambiguous,

14  not understood, and/or unreasonable statements of "belief" not relevant to the issues at hand.  To

15  the extent understood, Embarcadero denies the remaining allegations of paragraph 9.

16        10.     DelphiX' allegations are vague, ambiguous and not understood.  While

17  Embarcadero has additional trademarks and trade names – including without limitation a helmet

18  design and the company name – sometimes used with various products, such other marks and

19  names do not detract from the strong, longstanding and long prior rights of Embarcadero to the

20  DELPHI trademark.  To the extent there are additional allegations not otherwise answered,

21  Embarcadero denies them.

22        11.     Embarcadero admits that its products and DelphiX' products are currently

23  marketed to the same customers, and that DelphiX' marketing addresses the same customers as

24  Embarcadero. Embarcadero denies the remaining allegations in paragraph 11.

25        12.     Embarcadero admits that there is an opposition proceeding and a cancellation

26  proceeding pending before the Trademark Trial and Appeal Board of the U.S. Patent and

27

28

1   Trademark Office ("TTAB"). Embarcadero also admits that the facts used in

2   opposition/cancellation proceedings are often different than facts relevant in an infringement

3   action.  To the extent that Embarcadero made allegations relevant to, and in, the an opposition

4   and cancellation proceedings, those allegations speak for themselves in the context and factual

5   determinations to be made in those proceedings.  However, to the extent DelphiX is somehow

6   trying to claim that such allegations apply wholesale in an infringement proceeding, such a claim

7   is not only wrong but is denied.  To the extent not expressly admitted, Embarcadero denies the

8   remaining allegations as incorrect, false, and/or misleading.

9          13.   Embarcadero admits it uses the corporate name Embarcadero, as well as the trade

10  name EMBARCADERO in connection with most of its software and services offerings, as well

11  as a trademark.   Embarcadero has also used DELPHI as a trademark, and also as a trade name or

12  "umbrella" designation over a broad line of products over the years, including such products as

13  DELPHI, DELPHI PRISM, DELPHI 2 (through 9), DELPHI 2005 (through 2010), DELPHI

14  FOR PHP, DELPHI X, DELPHI XE, DELPHI XE2 (through XE8) and others, as well as related

15  documentation, applications, tools, services and education and training with those product lines.

16         14.   The allegation is misleading and incomplete in that it addresses the concept of

17  "rights in gross" to a trademark and thus, can't be answered with a simple admission or denial.

18  Embarcadero admits that it was the first to use the DELPHI mark in connection with its goods

19  and services and related goods and services.  Embarcadero denies any remaining allegations in

20  paragraph 14.

21         15.   The allegation is misleading and incomplete in that it addresses too broad of a

22  class of goods, and as such, can't be answered with a simple admission or denial. Embarcadero

23  admits that it was the first to use the DELPHI mark in connection with its goods and services and

24  related goods and services.  Embarcadero denies any remaining allegations in paragraph 15.

25         16.   DelphiX' allegation is vague, ambiguous and not understood.  DelphiX'

26  allegation fails to state where such claim is made and improperly suggests that ownership of a

27

28

single registration like the word STARBUCKS somehow limits one's rights. To the extent understood, Embarcadero denies same.

17.     Embarcadero admits that its DELPHI mark has been used for nearly 25 years, long prior to DelphiX' first use. Embarcadero further admits that due to various reasons the application process took approximately 10 years and that DelphiX' application has been pending for nearly 9 years. While Embarcadero's application took 10 years, such time was not due solely to alleged conflicts with third parties. To the extent not denied, Embarcadero denies the remaining allegations in paragraph 17.

18.     Embarcadero denies that a search of the US Patent and Trademark Office records shows others using DELPHI with a variety of products or even with software and information technology. Embarcadero further denies the accuracy of the chart in paragraph 18. Embarcadero denies that any other company, other than DelphiX, uses DELPHI in connection with goods or services conflicting with Embarcadero's rights. To the extent not otherwise denied, Embarcadero is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 18, and therefore denies the allegations therein requiring strict proof thereof.

19.     In that the registrations in the chart of paragraph 18 is false, misleading and inaccurate, Embarcadero can't admit or deny the allegations in paragraph 19. As such, Embarcadero denies the allegations of paragraph 19.

20.     In that the registrations in the chart of paragraph 18 is false, misleading and inaccurate, and that there is no evidence that such alleged marks are in use for the goods/services specified, Embarcadero can't admit or deny the allegations in paragraph 20. As such, Embarcadero denies the allegations of paragraph 20.

21.     In that the registrations in the chart of paragraph 18 is false, misleading and inaccurate, and that there is no evidence that such alleged marks are in use for the goods/services specified, Embarcadero can't admit or deny the allegations in paragraph 21. As such,

Embarcadero denies the allegations of paragraph 21.

22.     The allegations of paragraph 22 are vague, ambiguous, and not understood as to "general consuming public."  To the extent understood, such allegations are denied.

23.     The allegations of paragraph 23 are vague, ambiguous, and not understood as to "general consuming public."  To the extent understood, such allegations are denied.

24.     The allegations of paragraph 24 are vague, ambiguous, and not understood as to "general consuming public."  To the extent understood, such allegations are denied.

25.     The allegations of paragraph 25 are vague, ambiguous, and not understood as to "general consuming public."  To the extent understood, such allegations are denied.

26.     The allegations of paragraph 26 are vague, ambiguous, and not understood as to "general consuming public."  To the extent understood, such allegations are denied.

27.     The allegations of paragraph 27 are vague, ambiguous, and not understood as to "general consuming public."  To the extent understood, such allegations are denied.

28.     The allegations of paragraph 28 are vague, ambiguous, and not understood as to "general consuming public."  To the extent understood, such allegations are denied.

29.     The allegations of paragraph 29 are vague, ambiguous, and not understood as to "general consuming public."  To the extent understood, such allegations are denied.

30.     The allegations of paragraph 30 are vague, ambiguous, and not understood as to "general consuming public."  To the extent understood, such allegations are denied.

31.     The allegations of paragraph 31 are vague, ambiguous, and not understood as to "general consuming public."  To the extent understood, such allegations are denied.

32.     The allegations of paragraph 32 are vague, ambiguous, and not understood as to "general consuming public."  To the extent understood, such allegations are denied.

33.     The allegations of paragraph 33 are vague, ambiguous, and not understood as to "general consuming public."  To the extent understood, such allegations are denied.

34.     Embarcadero admits the allegations in paragraph 34 in that it has not used the

1   stylized DELPHIX mark but affirmatively states that it used the DELPHI X (without that

2   specific stylization).

3          35.     Embarcadero denies the allegations of paragraph 35.

4          36.     Likelihood of confusion is the test for registration and for infringement; albeit

5   different underlying facts are used in the analysis.  Not only is actual confusion not a

6   requirement of the trademark law either for registration purposes or infringement purposes, but

7   actual confusion is exceedingly difficult to capture as third parties are often hesitant to admit

8   his/her failures.

9          37.     Likelihood of confusion is the test for registration and for infringement; albeit

10  different underlying facts are used in the analysis.  Not only is actual confusion not a

11  requirement of the trademark law either for registration purposes or infringement purposes, but

12  actual confusion is exceedingly difficult to capture as third parties are often hesitant to admit

13  his/her failures.

14         38.     Likelihood of confusion is the test for registration and for infringement; albeit

15  different underlying facts are used in the analysis.  Not only is actual confusion not a

16  requirement of the trademark law either for registration purposes or infringement purposes, but

17  actual confusion is exceedingly difficult to capture as third parties are often hesitant to admit

18  his/her failures.

19         39.     Likelihood of confusion is the test for registration and for infringement; albeit

20  different underlying facts are used in the analysis.  Not only is actual confusion not a

21  requirement of the trademark law either for registration purposes or infringement purposes, but

22  actual confusion is exceedingly difficult to capture as third parties are often hesitant to admit

23  his/her failures.

24         40.     Likelihood of confusion is the test for registration and for infringement; albeit

25  different underlying facts are used in the analysis.  Not only is actual confusion not a

26  requirement of the trademark law either for registration purposes or infringement purposes, but

27

28

1  actual confusion is exceedingly difficult to capture as third parties are often hesitant to admit

2  his/her failures.

3      41.   Likelihood of confusion is the test for registration and for infringement; albeit

4  different underlying facts are used in the analysis.  Not only is actual confusion not a

5  requirement of the trademark law either for registration purposes or infringement purposes, but

6  actual confusion is exceedingly difficult to capture as third parties are often hesitant to admit

7  his/her failures.

8      42.   Likelihood of confusion is the test for registration and for infringement; albeit

9  different underlying facts are used in the analysis.  Not only is actual confusion not a

10  requirement of the trademark law either for registration purposes or infringement purposes, but

11  actual confusion is exceedingly difficult to capture as third parties are often hesitant to admit

12  his/her failures.

13      43.   Likelihood of confusion is the test for registration and for infringement; albeit

14  different underlying facts are used in the analysis.  Not only is actual confusion not a

15  requirement of the trademark law either for registration purposes or infringement purposes, but

16  actual confusion is exceedingly difficult to capture as third parties are often hesitant to admit

17  his/her failures.

18      44.   Embarcadero repeats and incorporates by reference its denials, admissions, and

19  responses to the previous statements and allegations in the Complaint as though fully set forth

20  herein.

21      45.   Embarcadero denies the allegations in paragraph 45.

22      46.   Embarcadero denies the allegations in paragraph 46.

23      47.   Embarcadero denies the allegations in paragraph 47.

24      48.   Embarcadero denies the allegations in paragraph 48.

25      49.   Embarcadero denies the allegations in paragraph 49.

26      50.   Embarcadero denies the allegations in paragraph 50.

27

28

51.     Likelihood of confusion is the test for registration and for infringement; albeit different underlying facts are used in the analysis.  Not only is actual confusion not a requirement of the trademark law either for registration purposes or infringement purposes, but actual confusion is exceedingly difficult to capture as third parties are often hesitant to admit his/her failures.  Moreover, in view of the steady expansion of the DelphiX products, and the advertisements and promotional materials describing its function as an Application Development Environment or something that facilitates rapid development of applications, actual confusion may well become extensive.

52.     Paragraph 52 contains a prayer for relief by DelphiX and does not contain any factual allegations to be admitted or denied.  To the extent paragraph 52 contains any allegations to which a response is required, such allegations are denied.

53.     Embarcadero repeats and incorporates by reference its denials, admissions, and responses to the previous statements and allegations in the Complaint as though fully set forth herein.

54.     Embarcadero denies the allegations in paragraph 54.

55.     Embarcadero denies the allegations in paragraph 55.

56.     Embarcadero denies the allegations in paragraph 56.

57.     Actual dilution has not been the test for dilution since the passage of the Trademark Revision Act over a decade ago.  Moreover, in view of the steady expansion of the DelphiX products, and the advertisements and promotional materials describing its function as an Application Development Environment or something that facilitates rapid development of applications, actual dilution may well become extensive.

58.     Paragraph 58 contains a prayer for relief by DelphiX and does not contain any factual allegations to be admitted or denied.  To the extent paragraph 58 contains any allegations to which a response is required, such allegations are denied.

59.     Embarcadero repeats and incorporates by reference its denials, admissions, and

responses to the previous statements and allegations in the Complaint as though fully set forth herein.

60.     Embarcadero denies the allegations in paragraph 60.

61.     Embarcadero denies the allegations in paragraph 61.

62.     Embarcadero denies the allegations in paragraph 62.

63.     Likelihood of confusion is the test for registration and for infringement; albeit different underlying facts are used in the analysis.  Not only is actual confusion not a requirement of the trademark law either for registration purposes or infringement purposes, but actual confusion is exceedingly difficult to capture as third parties are often hesitant to admit his/her failures.  Moreover, in view of the steady expansion of the DelphiX products, and the advertisements and promotional materials describing its function as an Application Development Environment or something that facilitates rapid development of applications, actual confusion may well become extensive.

64.     Paragraph 64 contains a prayer for relief by DelphiX and does not contain any factual allegations to be admitted or denied.  To the extent paragraph 64 contains any allegations to which a response is required, such allegations are denied.

65.     Embarcadero repeats and incorporates by reference its denials, admissions, and responses to the previous statements and allegations in the Complaint as though fully set forth herein.

66.     Embarcadero denies the allegations in paragraph 66.

67.     Embarcadero lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 67, and therefore denies the allegations therein requiring strict proof thereof.

68.     Embarcadero denies the allegations in paragraph 68.

69.     Likelihood of confusion is the test for registration and for infringement; albeit different underlying facts are used in the analysis.  Not only is actual confusion not a

1  requirement of the trademark law either for registration purposes or infringement purposes, but

2  actual confusion is exceedingly difficult to capture as third parties are often hesitant to admit

3  his/her failures.  Moreover, in view of the steady expansion of the DelphiX products, and the

4  advertisements and promotional materials describing its function as an Application Development

5  Environment or something that facilitates rapid development of applications, actual confusion

6  may well become extensive.

7        70.    Embarcadero denies the allegations in paragraph 70.

8        71.    Embarcadero denies the allegations in paragraph 71, in that the motion was

9  granted only in part and only to the extent of the offer made by Embarcadero to DelphiX.

10        72.    Paragraph 72 contains a prayer for relief by DelphiX and does not contain any

11  factual allegations to be admitted or denied.  To the extent paragraph 72 contains any allegations

12  to which a response is required, such allegations are denied.

13        73.    Paragraph 73 contains a prayer for relief by DelphiX and does not contain any

14  factual allegations to be admitted or denied.  To the extent paragraph 73 contains any allegations

15  to which a response is required, such allegations are denied.

16

17  **COUNTERCLAIMS**

18        For its counterclaims against, Plaintiff/CounterDefendant, Counterclaimant Embarcadero

19  alleges upon knowledge as to its own facts and upon information and belief of others that:

20  **PARTIES**

21        74.    Embarcadero Technologies, Inc. ("Embarcadero") is a Delaware corporation with

22  its principal place of business in Texas.

23        75.    Delphix Corp. ("DelphiX") is a Delaware corporation with it principal place of

24  business in Redwood City, California.

25  **JURISDICTION AND VENUE**

26        76.    These counterclaims are to rectify the federal trademark register, to recover

27

28

damages, for injunctive relief and to recover attorneys fees under the trademark laws of the United States and related state laws, and this court has original jurisdiction of the subject matter for each of the following claims:

a. Trademark infringement in violation of the *Lanham Act*, 15 U.S.C. §1051, *et seq.,* with jurisdiction vested in this Court by virtue of 15 U.S.C. § 1121 and 28 U.S.C. § 1338 (a).

b. Trademark infringement in violation of the *Lanham Act*, 15 U.S.C. § 1125 (a), with jurisdiction vested in this Court by virtue of 15 U.S.C. § 1121 and 28 U.S.C. §1338(a).

c. Trademark infringement in violation of state common law with jurisdiction vested in this Court by virtue of 28 U.S.C. §§ 1338(b) and 1367(a).

d. Violation of California common law prohibition against unfair competition, with jurisdiction vested in this Court by virtue of 28 U.S.C. §§ 1338(b) and 1367(a).

e. Violation of California's state statute prohibiting unlawful competition, Cal. Bus. & Prof. Code § 17200, with jurisdiction vested in this Court by virtue of 28 U.S.C. §§ 1338(b) and 1367(a).

f. Rectification of the Trademark Register by denying registration to DelphiX' pending trademark application serial number 77/944256 and cancelling DelphiX' trademark registration no. 3768914, with jurisdiction vested in this Court by virtue of 15 U.S.C. §§1119 and 1121.

77. Personal jurisdiction and venue are proper in this district in that this is a counterclaim and the main claims are pending in this action.

78. Personal Jurisdiction and venue are also proper in this district in that plaintiff/counter-defendant has its principal place of business in this district.

**EMBARCADERO HAS EXCLUSIVE RIGHTS IN**

**THE FEDERALLY REGISTERED "DELPHI" MARK**

**IN CONNECTION WITH VARIOUS SOFTWARE PRODUCTS**

79.     The mark DELPHI was first adopted and used in 1994 to identify a newly introduced line of computer software tools and utilities for application development and database implementation (software applications being, for the most part, not useful without a database with which to interface, and databases being, for the most part, not useful with software applications which access and utilize the data.   As applications and the associated databases ended up being stored or located separately (including, in more recent years, cloud-based), the operation and specifics of the application development and database implementation evolved, but the basic functionality carried through - essentially, companies focused on better, faster and more efficient application development, better and more "robust" databases structures, and optimizing the ability to create, maintain and access the applications and the databases necessary for their work.

80.     In its early iteration, DELPHI was a rapid application development (RAD) software tool, which migrated into a robust Integrated Development Environment (IDE), which allowed for rapid application development in many environments, and working with multiple types and sources of databases.

81.     The DELPHI name has been continuously used by Embarcadero, its related companies, and its predecessors alone and in multiple variations throughout approx. 25 years, including in forms and on products such as DELPHI, DELPHI PRISM, DELPHI 2 (through 9), DELPHI 2005 (through 2010), DELPHI FOR PHP, DELPHI X, DELPHI XE, DELPHI XE2 (through XE8) and others, as well as related documentation, applications, tools, services and education and training with those product lines.

82.     There is a long history and practice in the computer and software industry of use of "X" as a suffix and/or addition to well-known marks to either indicate a 10th (i.e., Roman

numeral X) version, or an eXtended and enhanced version of software or product, or XE for an eXtended Edition, or in some cases an eXperimental or beta version.  See, for example, OSX (of Apple), Adobe X (of Adobe Software).

83.     The mark and name DELPHI was first adopted as a reference to the legendary Greek font of wisdom and knowledge, the Oracle at Delphi.  At the time, one of the leading databases in the computer industry was from Oracle Corp. and naming software DELPHI that facilitated communicating with Oracle was a clever, albeit somewhat indirect, reference to the awe of the ancient classical world's faith in the importance of the Oracle at Delphi.

84.     Counterclaimant is informed and believes and thereon alleges that this is exactly the same reason the DelphiX was named - as a reference to the Oracle at Delphi.

85.     DelphiX proudly explained this same reason for its name selection of DelphiX on its website.  DelphiX only removed the reference to the Oracle at Delphi from its website after Embarcadero pointed out the similarity and concern for the very confusion Embarcadero's predecessor anticipated.

86.     Rather than taking steps to distinguish itself from Embarcadero and Embarcadero's leading DELPHI products, DelphiX took the very unusual action of affirmatively promoting Embarcadero products on its own DelphiX websites, thus creating the impression and image of a connection with, association with and/or sponsorship by Embarcadero.

87.     For many years DelphiX had a website titled  --The Oracle at DelphiX – which promoted its DelphiX products.



88.     As part of its intentional practice and policy of emulating and creating association between DELPHI and DELPHIX in the minds of consumers, DelphiX hired Kyle Hailey.  Mr.

1   Hailey was a former Embarcadero developer and  is very well known in the software industry.

2   Mr. Hailey's numerous blogs, website postings and writings on behalf of DelphiX frequently

3   discussed and even praised software products from Embarcadero.

4        89.     Kyle Hailey was the key developer of a very well-known Embarcadero product

5   named DB Optimizer, and frequently promoted Embarcadero's DB Optimizer products on The

6   Oracle at DelphiX website, and other websites, postings and articles by Hailey, resulting in a

7   clear and intentional association between Embarcadero, Embarcadero's DELPHI products and

8   DELPHIX.

9        90.     DelphiX' website The Oracle at DelphiX even promoted Embarcadero's DB

10  Optimizer as one of the "best Oracle performance tools", and advertised many events and

11  publications about the Embarcadero product.

12       91.     The Oracle at DelphiX website also praises and promotes the Embarcadero All

13  Access suite of products, again resulting in a clear and intentional association between

14  Embarcadero, its DELPHI products and DELPHIX, and suggesting approval and/or sponsorship

15  by Embarcadero.

16       92.     DelphiX attempts to characterize its DELPHIX products as somehow different

17  and unrelated to DELPHI, and somehow highly specialized in its own right.

18       93.     Whether or not DelphiX initial products and market focus was specialized as

19  DelphiX touts, what is key for infringement purposes is that DelphiX now advertises and

20  promotes its DELPHIX products to the same end customers and for similar, compatible and/or

21  closely related purposes.

22       93.     DelphiX promotes its DELPHIX products as expediting and facilitating software

23  application development and data management.

24       94.     DelphiX promotes its DELPHIX products as assisting application development

25  teams to increase project output many times over, and to provide innovations in application

26  development and delivery.

27

28

95.     DelphiX promotes its DELPHIX products as expediting and facilitating "agile" application development ("agile development") and data management.

96.     DelphiX promotes its DELPHIX products as expediting and facilitating Enterprise Resource Planning (ERP) applications and development.

97.     DelphiX promotes its DELPHIX products as expediting and facilitating applications development environments (another way of saying integrated development environments or IDE's).

98.     DelphiX promotes its DELPHIX products as expediting and facilitating Master Data Management and Master Data Modeling (both related concepts identified by the acronym MDM) applications and development.

99.     DelphiX promotes its DELPHIX products as expediting and facilitating use in data virtualization and virtualization environments.

100.    DelphiX promotes its DELPHIX products, *inter alia*, as of interest and assistance to application developers.

**DELPHIX WITH FULL KNOWLEDGE OF EMBARCADERO'S RIGHTS HAS EXPANDED ITS MARKETING AND ADVERTISING TO EMBARCADERO'S CUSTOMERS THUS CONFIRMING DELPHIX' MALICIOUS INTENT**

101.    Embarcadero's DELPHI product is so well known in the software industry that DelphiX could not have possibly been ignorant of the substantial rights enjoyed in Embarcadero's DELPHI mark.

102.    Even if DelphiX could somehow claim ignorance initially, after Embarcadero filed the administrative proceedings before the Trademark Trial and Appeal Board ("TTAB") of the U.S. Patent & Trademark Office, there is no question that DelphiX was then keenly aware of Embarcadero's rights.

103.    Yet, with full knowledge of Embarcadero's rights and objections to DelphiX' use of the DELPHIX mark, DelphiX during the pendency of the disputes at the TTAB, before this

Court and at the Ninth Circuit, DelphiX has been *expanding* its advertising and marketing to further overlap with Embarcadero's presence in the marketplace.

104.   This creeping expansion by DelphiX evidences DelphiX' intentional, willful and malicious infringement, entitling Embarcadero to enhanced damages, attorneys' fees and costs.

105.   As a result of the widespread and continuous use and promotion of the DELPHI trademarks described above, such trademarks are well known throughout the United States and have become widely known and recognized as identifying Embarcadero as the source of a variety of software products including, without limitation, the DELPHI products, and as distinguishing the source of these goods from those of others.  These trademarks have come to and now do represent and symbolize the enviable reputation and very valuable goodwill of Embarcadero among advertisers, consumers, and other users of the software.

106.   Embarcadero is further informed and believes, and thereon alleges, that  unless enjoined and restrained by the Court, plaintiff will continue to purchase, import, advertise, promote, offer for sale, sell and distribute the infringing DelphiX products.

107.   DelphiX is using the DELPHIX mark without the consent or permission of Embarcadero.

108.   Plaintiff's use of trademarks virtually identical to Embarcadero's trademarks on or in connection with the promotion, advertising, sale, offering for sale, or distribution of its software constitutes trademark infringement and unfair competition under 15 U.S.C. § 1125 (a), because such acts constitute false representations, false descriptions, false designations of origin and cause a likelihood of confusion, deception and mistake by the consuming public and the trade, and disparages Embarcadero's goodwill and reputation.

109.   Plaintiff's use of trademarks virtually identical to Embarcadero's distinctive trademarks creates a likelihood that a false and unfair association will be made between the DELPHIX software and the goods of Embarcadero such that the purchasing public is likely to

believe, that the DELPHIX software is a product of Embarcadero or is associated with, affiliated with or otherwise sponsored by Embarcadero.

110.    Plaintiff's unlawful acts, unless restrained, are likely to continue to  cause actual confusion, mistake or deception to the purchasers of the DELPHIX software and Embarcadero's goods.


**FIRST CLAIM FOR RELIEF**

(Trademark Infringement in Violation of the *Lanham Act*)

[15 U.S.C §§ 1114-1119]

111.    Embarcadero realleges and incorporates herein by this reference each and  every one of the allegations contained in paragraphs 1 through 110 above, as though fully set forth herein.

112.    Plaintiff's acts complained of herein constitute trademark  infringement in violation of 15 U.S.C. § 1114 et seq.

**SECOND CLAIM FOR RELIEF**

(Violation of § 43(a) of the Lanham Act – Trademark)

[15 U.S.C. § 1125 (a)]

113.    Embarcadero realleges and incorporates herein by this reference each and  every one of the allegations contained in paragraphs 1 through 112 above, as though fully set forth herein.

114.    By virtue of Plaintiff's creeping infringement, and expanding marketing channels, Plaintiff has infringed Embarcadero's DELPHI trademarks, competed unfairly with Embarcadero, and misappropriated and traded upon Embarcadero's goodwill and business reputation by falsely representing its goods as being sponsored by, approved by, or connected with Embarcadero.

115.    Embarcadero is informed and believes and thereon alleges, that Plaintiff is now, in various ways including through the use of advertising and marketing materials through its agents and employees, falsely representing to potential purchasers of its goods that such goods are affiliated, connected or associated with Embarcadero by reason of the infringing use of Embarcadero's distinctive DELPHI trademark.

116.    Plaintiff is now making false and misleading representations by engaging in commercial advertising using trademarks and promotional materials which are now virtually identical to trademarks and which are now being directed to the same class of customers as Embarcadero's.

117.    Plaintiff is now using in commerce false designations of origin, false and misleading descriptions of fact or false or misleading representations of fact which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Plaintiff with Embarcadero and as to the origin, sponsorship or approval of Plaintiff's goods, services or commercial activities by Embarcadero.

118.    As a result of the foregoing, Plaintiff is unfairly competing with Embarcadero in violation of 15 U.S.C. § 1125(a).

**THIRD CLAIM FOR RELIEF**

(State Common Law Trademark Infringement)

119.    Embarcadero realleges and incorporates herein by this reference each and  every one of the allegations contained in paragraphs 1 through 118 above, as though fully set forth herein.

120.    Plaintiff's acts complained of herein constitute infringement under  the common law of the State of California.

**FOURTH CLAIM FOR RELIEF**

(State Common Law Unfair Competition)

121.    Embarcadero realleges and incorporates herein by this reference each and  every one of the allegations contained in paragraphs 1 through 120 above, as though fully set forth herein.

122.    Plaintiff's conduct alleged herein was intended to use simulations of Embarcadero DELPHI trademark and unique identifying features in a manner which is likely to confuse and mislead members of the relevant public as to the origin, sponsorship, approval, or license of Plaintiff and of certain of Plaintiff's products, and as to the false association or affiliation of said products with Embarcadero.  Plaintiff's conduct as alleged herein was intended to confuse and mislead members of the public, and members of the public will believe that Embarcadero sponsored, approved, or is affiliated with Plaintiff and that Embarcadero originated, approved or licensed Plaintiff's products.

123.    Plaintiff's conduct alleged herein infringes Embarcadero common law  trademark rights, is improper and constitutes common law trademark infringement and unfair competition with Embarcadero all of which have damaged and will continue to damage irreparably Embarcadero's goodwill and reputation unless restrained by this Court, because Embarcadero has no adequate remedy at law for Plaintiff's conduct.

**FIFTH CLAIM FOR RELIEF**

(Violation of State Statutory Unfair Competition Laws)

124.    Embarcadero realleges and incorporates herein by this reference each and  every one of the allegations contained in paragraphs 1 through 123 above, as fully set forth herein.

125    Plaintiff has engaged in unfair trade practices within the meaning of  the Cal. Bus. & Prof. Code §§ 17200 *et. seq*., by engaging in the acts alleged herein, including:

a.    Passing off Plaintiff's goods as those of Embarcadero;

1      b.      Causing a likelihood of confusion or a mistake as to the source,

2  sponsorship, approval or certification of Plaintiff's goods;

3      c.      Causing a likelihood of confusion or misunderstanding as to the

4  affiliation, connection or association of Plaintiff's goods with Embarcadero and its goods;

5      d.      Representing that some of Plaintiff's goods have sponsorship, approval,

6  characteristics or qualities that they do not have, or that Plaintiff's goods have a sponsorship,

7  approval, status, affiliation or connection that it does not, in fact, have;

8      e.      Disparaging the goods and business of Embarcadero by making false and

9  misleading representations of fact; and

10      f.      Engaging in other conduct which similarly creates a likelihood of

11  confusion or of misunderstanding.

12      126.    Plaintiff's actions alleged herein and its unlawful trade practices  are willful and

13  intentional and are likely to cause substantial injury to the public and to Embarcadero and

14  Embarcadero therefore is entitled to injunctive relief pursuant to Cal. Bus. & Prof. Code §

15  17203.

16                          **SIXTH CLAIM FOR RELIEF**

17                     **[Rectification of Trademark Register]**

18      127.    Embarcadero realleges and incorporates herein by this reference each and  every

19  one of the allegations contained in paragraphs 1 through 126 above, as fully set forth herein.

20      128.    Issues concerning the right to registration – whether maintaining/cancelling a

21  registration or seeking a new registration are governed by certain different standards than

22  infringement standards.

23      129.    In determining the right to registration when there is a conflict based upon

24  likelihood of confusion,  the Court looks to the goods listed in the application/registration and

25  not the actual goods/services used by the junior party.

26

27

28

130.    Among other things, if the junior party does not have limitations in the identification of goods, such as limitations on products described, limitations on the channels of trade, or limitations on the classes of customers, is must be presumed that the junior party/trademark applicant will sell its goods through all channels of trade and will market and advertise its goods through all means.

131.    Based upon the standards for registration, there is a strong and clear likelihood of confusion between DelphiX' marks and Embarcadero's DELPHI marks.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant/Counterclaimant prays for relief as follows:

1.    That Plaintiff and each of Plaintiffs' agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation, be enjoined and restrained preliminarily and perpetually and permanently from:

a.    Using in any manner the DELPHIX trademarks, or colorable imitations thereof, alone or in combination, or with a word or words, or using any other words, symbols, configurations or designs which so resemble said marks as to be likely to cause confusion, deception or mistake, on or in connection with the advertising, offering for sale or sale of any product which is not manufactured, distributed or otherwise authorized by or for Embarcadero;

b.    Attempting to or passing-off, inducing or enabling others to sell or pass-off any product as a product affiliated with or sponsored by Embarcadero, which product is not produced under the authorization, control and supervision of Embarcadero and approved by Embarcadero for sale under the Embarcadero trademarks;

c.    Copying, making colorable imitations of, or modifying any of Embarcadero's advertising or promotional materials for use in connection with the advertising, promotion or sale of any of Plaintiff's goods;

d.    Committing any acts calculated or intended to cause purchasers to believe falsely that any of plaintiff's products are associated with, sponsored by, approved by,

guaranteed by, connected with or produced under the control and supervision or within the

authority of Embarcadero;

> e.  Further diluting and infringing the rights of Embarcadero in and to the
Embarcadero trademarks or otherwise damaging Embarcadero's goodwill and business
reputation;

> f.  Otherwise competing unfairly with Embarcadero in any manner;

> g.  Obtaining, possessing, shipping, delivering, distributing, returning or
otherwise disposing of in any manner advertising materials, goods or inventory bearing the
DELPHI or DELPHIX marks, which materials, goods or inventories were not manufactured by
or for Embarcadero or authorized by Embarcadero to be used, sold or offered for sale in
association with or bearing the Embarcadero trademarks;

> h.  Obtaining, possessing, manufacturing or using any tools, dies, stamping,
mixing, embossing, printing, labeling, packaging, silk screening, molding equipment or any
other apparatus designed especially for the manufacture or labeling of unauthorized products
bearing the Embarcadero trademarks and packaging and advertising or display material relating
thereto; or

> I.  Continuing to perform in any manner whatsoever any infringing acts.

> 2.  That Plaintiff be required to deliver immediately to Embarcadero or its attorneys
for destruction any and all products, guarantees, warranties, circulars, price lists, labels, signs,
prints, packages, wrappers, pouches, receptacles, advertising matter, promotional and other
material in their possession or control bearing any Embarcadero trademarks, or colorable
imitations thereof, alone or in combination with any other words, or any other words or symbols
which so resemble the Embarcadero trademarks as to be likely to cause confusion, mistake or
deception, which is or can be used in connection with the advertising, offering for sale, or sale of
any product or service which is not manufactured, distributed, or otherwise authorized by
Embarcadero.

3.     That Plaintiff be required to deliver immediately to Embarcadero or its attorneys for destruction any and all disks, tapes, computer graphics files, molds, plates, screens, graphics, matrices, patterns and any other means of making  simulations, reproductions, counterfeits, copies or colorable imitations of the Embarcadero trademarks which are for use on products, containers, packaging, disks, tapes, labeling, advertising and display literature or other material not authorized by Embarcadero.

4.     That Plaintiff be required to supply Embarcadero or its attorneys with a complete list of entities from whom it purchased and to whom it distributed and sold products, in bulk, in connection with the imitation Embarcadero trademark and not authorized by Embarcadero.

5.     That Plaintiff be required, in accordance with 15 U.S.C § 1117, to account for and pay to Embarcadero the following:

a.     All gains, profits, benefits and advantages derived by plaintiff and three times all damages suffered by Embarcadero from the above-described acts of trademark infringement, misrepresentation, unfair trade practices and unfair competition and that such amounts be determined by the Court;

b.     All such other damages as the Court shall deem to be just; and

c.     All costs and attorneys fees incurred in this action.

6.     That plaintiff be required to pay Embarcadero punitive and enhanced damages and profits in an amount as the Court may determine for its malicious, willful, intentional, deliberate and tortious conduct.

7.     That DelphiX' pending trademark application serial number 77/944256 be denied registration.

8.     That DelphiX' trademark registration number 3768914 be cancelled and removed from the Trademark Register.

9.     That Embarcadero have such other and further relief or as the Court deems just and proper.

1   Date: February 14, 2019                    Respectfully submitted,

2                                              NEIL D. GREENSTEIN
3                                              MARTIN R. GREENSTEIN
                                               TECHMARK
4

5
                                   By:___/s/ Neil D. Greenstein_____
6                                              Neil D. Greenstein
                                               Attorneys for Defendant/Counterclaimant
7                                              Embarcadero Technologies, Inc.

8

9

10                          **DEMAND FOR JURY TRIAL**

11

12         Counterclaimant, Embarcadero Technologies, Inc. hereby requests a trial by jury on all

13   issues triable of right by a jury.

14

15   Date: February 14, 2019                    Respectfully submitted,

16                                              NEIL D. GREENSTEIN
17                                              MARTIN R. GREENSTEIN
                                               TECHMARK
18

19
                                   By:__/s/ Neil D. Greenstein_____
20                                             Neil D. Greenstein
                                               Attorneys for Defendant/
21                                             Counterclaimant
                                               Embarcadero Technologies, Inc.
22

23

24

25

26

27

28